## NUGENT v. ALLEN.

*(Jackson.*    May 30, 1895.)

1. PARTNERSHIP. *Partner's authority over assets of dissolved firm.*

   A member of a dissolved firm has implied authority to offset a firm claim against a debt due from him to the firm debtor, where such claim has been in his possession for over twenty years, with unlimited power and discretion in him as to its management and mode of collection, and his financial condition has been such during that time that his former partners would not have questioned his right to collect the claim in that manner. *(Post, p. 103.)*

2. SAME. *Application of assets of firm to partner's individual debt.*

   Payment of an individual debt by a partner out of the partnership assets will be held good as against the other members of the firm, where they expressly or impliedly assent thereto or afterwards ratify it. *(Post, pp. 103, 104.)*

   Case cited and approved: 12 Pet., 221.

   Cited and distinguished: Rogers v. Betterton, 93 Tenn., 635.

3. SAME. *Estoppel of partners by their laches.*

   Members of a dissolved firm are estopped to question the authority of another member to consent to a decree setting off a judgment upon a firm claim which he had held for collection for over twenty years against a judgment upon his individual debt, by a bill to set it aside filed two and a half years after it was rendered, and after the affirmance of the judgment against him, where he is insolvent, and has, in the meantime, because of the offset, given no bond for the judgment on the appeal. *(Post, pp. 105, 106.)*

4. SAME. *Partners' interests in assets of dissolved firm.*

   An agreement by the members of a dissolved firm that their interests in the uncollected assets shall be in certain proportions does not make each member the owner of an aliquot part of a particular claim, where collections have been made by each

7—11 P

member and there has been no settlement between them. (*Post, pp. 105, 106.*)

5. SAME. *Assignment of firm assets ineffectual, when.*

An assignee under a voluntary assignment, or one upon a past consideration, of the interest of a member of a dissolved firm in a firm claim, cannot recover thereon where her assignor, who was another member of the firm, acquired such interest after he had, without authority as to his former partners, consented to a decree setting off such claim against an individual indebtedness due from him. (*Post, p. 107.*)

FROM SHELBY.

Appeal from Chancery Court of Shelby County, JOHN L. T. SNEED, Ch.

SMITH & TREZEVANT and TURLEY & WRIGHT for Nugent.

WM. M. RANDOLPH & SONS for Allen.

WILKES, J. The present case is an offshoot of the case of *Allen* v. *Shanks*, reported in 6 Pickle, 359. In that case it was by this Court decreed, in substantial affirmance of the decree below, among other things, that Thos. H. Allen was indebted to the estate of Dr. Lewis Shanks, growing out of his acts as one of the executors, in the sum of $38,-678.28, and that the estate was indebted to the firm of Thos. H. and J. M. Allen & Co. in the sum of $40,604.55.

While the cause was pending in the Court below, prior to this appeal, and on January 15, 1891, a decree had been entered substantially to the effect that Thos. H. Allen was the surviving partner of the firm of Thos. H. and J. M. Allen & Co., and the representative thereof, and entitled to control the judgment in favor of the firm, and that all parties interested having consented thereto, it was ordered and decreed that the two judgments be set off, leaving a balance in favor of the firm of $1,655.52, after computing interest. The decree recited that it was entered by consent of Thos. H. Allen and all other parties in interest in the suit, and to save the trouble and expense of executing the decrees separately, and to avoid delay, but not so as to prejudice the rights of either party on appeal or writ of error to contest the amount found due by either.

After this and other decrees were affirmed in this Court, and the cause remanded, a motion was made on petition filed on behalf of the present complainants for the relief now prayed for, which was refused and the petition dismissed.

The present bill was thereupon filed, June 19, 1893, by Perry Nugent and Eugene Soniat, the latter in his representative capacity as syndic in insolvency of Jno. B. Lallande against Thos. H. Allen and all the parties interested in the estate of Dr. Shanks, and J. M. Hill, the co-executor with Allen of Shanks' estate, in which it is charged, in substance, that the decree of January 15, 1891, purporting to

be by consent, was not, in fact, consented to by the parties interested in the judgment in favor of Thos. H. and J. M. Allen & Co., and, as a matter of law, was not warranted. It is charged that complainants, Nugent and Lallande, were partners with Thos. H. Allen in the firm of Thos. H. and J. M. Allen & Co.; that each had a specific part of said judgment, and had never given any consent or authority that their interest and share in said judgment should be offset by the personal judgment against Thos. H. Allen, and that the result of the consent decree was to deprive them of their shares and interests in the judgment, inasmuch as Allen had become, and perhaps was insolvent when the consent decree was entered. Hill, the co-executor with Allen of Dr. Shanks' estate, died before the consent decree was rendered, and after his death Allen continued to act as sole executor. The wives and children of both Hill and Allen are interested in the estate of Dr. Shanks, as they (Hill and Allen) were sons-in-law of Dr. Shanks, as well as his executors.

The bill seeks to set aside the consent decree of January 15, 1891, and the decree of this Court affirming the same, of date February 24, 1893, at least so far as it directs the firm's judgment to be set off *in toto* against the individual judgment against Allen, conceding, however, that Allen's interest or share in the same may be so set off, and judgment is asked in favor of each for his proportionate part of said firm judgment, and for a sale of Dr. Shanks'

real estate to pay the same.  The Chancellor granted relief, and gave judgment, substantially as prayed, in favor of complainant Nugent for twenty-eight per cent. of the firm judgment, and in favor of Soniat, syndic of Lallande, for eleven per cent. of the same, the latter to inure to the use of Mrs. Ellen H. Allen, the wife of Thos. H. Allen, the decree reciting that the interest of Lallande had, since the filing of the bill, been sold and transferred by his syndic to Mrs. Allen, through Thos. H. Allen, her husband, in consideration of her having previously released certain claims to homestead and dower in lands in Arkansas, for the benefit of Allen's creditors.

From this decree all the defendants, except Allen and Jno. C. Latham, appealed, and they have assigned errors.

Without taking up the assignments in detail, we only state the substance of the contention by each. Defendants insist that Nugent and Lallande were, as a matter of fact and law, represented by Thos. H. Allen in the matter of the consent decree, and that the set-off was authorized by the express or implied assent and authority of all the partners of Thos. H. and J. M. Allen & Co.; that, independent of any express authority, Thos. H. Allen, as surviving and liquidating partner, with full control and unlimited power to collect the judgment, had a right to make the offset and agree to the decree, and it will be binding, unless actual fraud is shown in its procurement; that Nugent and Lallande, by seeking to ob-

tain the benefits of the decree, are estopped to deny
their consent through Allen, their agent; that no ac-
tual fraud appears on the face of the decree, nor
does the proof show such a state of facts as amounts
to fraud; that complainants have been guilty of laches
in allowing the consent decree to be entered in the
Court below and affirmed in this Court, and to stand
unobjected to for more than two years, until the
insolvency of Allen has operated to the detriment of
the devisees and legatees of Dr. Shanks; that they
are barred by the statute of limitations unless they
come in under and accept the decrees obtained by
Allen for their benefit; that they cannot recover pro-
portionate amounts of the judgment in favor of the
firm, but it can only be sued for as an entirety;
that the proceedings by which the claim of Lallande
was vested in Soniat as syndic, and through him in
Mrs. Allen, conferred no right of recovery in either
of them beyond the State of Louisiana, where the
proceedings were had.

On the other hand, complainants contend that, as a
matter of fact, Allen did not consent to the decree
either for himself or for them; that he had no au-
thority, in law or fact, to assent to such decree as
to their shares in the Shanks judgment; that the rel-
ative rights of the partners having been previously
fixed by them in certain proportions, they had a right
to recover in such proportions; that all parties in in-
terest knew that the claim belonged to the firm, and
not to Allen individually, and that the attempt to

make such offset was a fraud upon them to the extent of their interests.

While there is conflict in the testimony on some material points, it satisfactorily appears that the claims of T. H. and J. M. Allen & Co. against the estate of Dr. Shanks were placed in the hands of Thos. H. Allen by his partners for collection prior to March, 1869, and with unlimited power and discretion as to their management and mode of collection. The firm had dissolved, and at that time, and for long years afterward, Allen was a man of great wealth, unlimited credit, and unbounded confidence. His assumption of the debt as his own, and to be accounted for by him, would have been agreeable to the partners at any time. He had it thus under his management for over twenty years, and so unlimited was his authority and discretion, that Mr. Nugent states he had almost lost sight of it, and his right to collect it by offset, or in any other way, during this time, would not have been questioned. If he did not have express authority, under these circumstances and facts he had implied authority to make any kind of settlement or collection, by offset or otherwise, that he saw proper, and the parties dealing with him were well warranted in so believing, under the unlimited and unquestioned authority exercised by him, without protest or question from his partners for more than twenty years.

It is a general rule of law that one partner may not use the partnership assets in payment of his indi-

vidual debt, but if the copartners expressly or impliedly
assent thereto, or afterwards ratify the act, the pay-
ment will be held good.     *Rogers & Sons* v. *Batchelor ·
et al.,* 12 Peters, 221; *Rogers* v. *Betterton et al.,* 9
Pick., 635, and cases cited.     The present case is dis-
tinguished from the case last above cited, in that, in
the 9 Pickle case, there was no express author-
ity given to use the firm assets by the individual
partner, but all the facts negatived the idea of such
authority, and the transaction amounted to a fraud-
ulent appropriation of the firm's assets to a partner's
pre-existing debt.

But in this case there can be no actual fraud,
and, under the facts, no constructive or legal fraud.
It is urged that this fraud arose out of the repre-
sentation made in the decree that Thos. H. Allen was
the surviving partner of the firm, and had control
of the claim with authority to make the set-off.     The
claim was originally filed in the name of Thos. H.
and J. M. Allen, without adding "& Co." to the
name of the creditor, but no fraud is predicated of
this filing, and it seems to have been but a cler-
ical omission.     J. M. Allen had died, and Thos. H.
Allen was treated as the surviving partner, and was
so believed to be not only by the other parties to
the suit, but also by the attorneys who represented
Thos. H. Allen and the firm, for they state that
they did not know that complainants, or any other
person, had any interest in the judgment except Thos.
H. Allen alone.

The set-off was arranged by the attorneys of Allen, to obviate the trouble and delay of executing separate judgments and to relieve him from the necessity of giving an appeal bond to cover the amount of the judgment against him, which, otherwise, he would have been required to give.

Again, we are of opinion complainants have been guilty of such laches in making their claim as must estop them from questioning the authority of Thos. H. Allen to consent to such decree, and must be held to have ratified his action in regard to it. It is evident that the parties interested in the estates of Dr. Shanks and Mr. Hill would now be greatly prejudiced by setting aside the consent decree, inasmuch as the judgment against Thos. H. Allen cannot now be collected on account of his insolvency, and, in consequence of the offset, he did not give a bond on appeal to cover the amount of the judgment. Their bill was not filed until two years and six months after the consent decree had been rendered, and until after it had been affirmed in this Court, and yet the firm of Thos. H. and J. M. Allen & Co. was dissolved in 1876, and their claim filed for payment in 1869. The firm has never been wound up, and Mr. Nugent, in his deposition, says it cannot be until the assets are settled, which may take a hundred years, unless the partners can sell out to each other. He states that the firm had real estate and more than $500,000 uncollected claims, which have never been divided. Collections have

been made by each partner of these assets, and while there have been distributions of these collections from time to time, there has been no settlement between the partners, they only agreeing that their interests in the uncollected assets should be in certain proportions, the same as recited in the Chancellor's decree. It may be that, on a settlement, Thos. H. Allen will be entitled to the full amount used in set-off with Dr. Shanks' estate. How this may be we cannot tell, but it is evident that the claim belongs to the firm as an entirety, and not in aliquot parts to the several partners. There is one question of fact strongly controverted in the record, and that is, whether Thos. H. Allen, as a matter of fact, did agree to the consent decree of January 19, 1891. His own version is, that if he did so, it was under a misapprehension of its contents, and that he only intended to authorize his share of the judgment to be used in offset, and did not authorize a similar application of the shares of his partners, Nugent and Lallânde.

As opposed to this version, we have the recitals in the decree, and the fact that on appeal he was only required to give bond in the sum of $1,000, sufficient to cover cost, but not the debt if not set off, and also the statement of his attorneys that he fully understood the terms of the decree, and authorized and consented to it, as well as their statements that he represented that he had the right' so to do, and their ignorance that any other persons were interested

in the judgment. Certainly, by the course of dealing, all other parties were led to believe that he was either the sole owner of the judgment, or had full power to control it. We need not enlarge on this feature of the case, as we are fully satisfied he gave his consent to the decree according to its terms, and was, either expressly or by implication, authorized to consent for his partners, and did so.

In no event could Mrs. Allen be allowed to recover. If we grant that the proceedings in Louisiana were valid, and had any force beyond the State, still, it clearly appears that, after Thos. H. Allen had consented to set off the judgment in favor of the firm against the Shanks judgment, he bought this interest of Lallande's at insolvent sale, and paid for it with his own funds, and then assigned it to his wife, Mrs. Allen, in consideration of her having previously waived certain rights of homestead and dower in lands in Arkansas, which he had conveyed for the benefit of his creditors. The transaction was virtually a transfer from the husband to the wife (for a, voluntary, or, at least, a past, consideration) of this interest, which he had previously authorized to be set off and extinguished. Having vested in him by his purchase and payment of the price, it must go as he had previously directed, in set off of the Shanks decree to its full extent, and Mrs. Allen has no right of recovery in her. The decree of the Chancellor is erroneous, and it is reversed and the bill dismissed with costs.